607 So.2d 992 (1992)
Percy CHAMPAGNE, Plaintiff-Appellant,
v.
MARTIN MILLS, INC., et al., Defendants-Appellees.
No. 91-791.
Court of Appeal of Louisiana, Third Circuit.
November 4, 1992.
*993 George W. McHugh, St. Martinville, for plaintiff-appellant.
Voorhies & Labbe, John N. Chappuis, Lafayette, for defendants-appellees.
Before STOKER and YELVERTON, JJ., COREIL[*], J. Pro Tem.
JOSEPH E. COREIL, Judge Pro Tem.
This is an appeal by plaintiff-appellant, Percy Champagne, from a trial court judgment whereby he was granted worker's compensation in the amount of $122.29 per week beginning February 18, 1988 and ending July 18, 1988, subject to the defendant-appellee's, Martin Mills, Inc., receipt of a credit for compensation benefits paid plaintiff between February 18, 1988 and May 25, 1988.
Champagne appeals, contending that the trial court erred in failing to find him temporarily totally disabled and entitled to continued compensation benefits together with penalties and attorney's fees.
After our review of the record and appellate briefs, we affirm the judgment of the trial court, as amended below.

FACTS
Champagne was employed by Martin Mills, Inc. in July of 1987, and continued his employment at defendant's garment factory until February 18, 1988, at which time he slipped in an oily substance while carrying a bundle of material, striking his head on a concrete floor. As a result of the fall, Champagne was rendered temporarily unconscious and sustained injuries to his head, neck, and back. He was taken to the emergency room at Our Lady of Lourdes Hospital in St. Martinville, where he was admitted for observation and kept overnight. He was discharged the following day with medication prescribed for pain and instructed to be re-evaluated in four days.
At the time of the accident, Champagne was earning an average weekly wage of $183.44 and was subsequently paid weekly compensation of $122.29. On May 25, *994 1989, Martin Mills terminated plaintiff's weekly compensation benefits upon learning of Mr. and Mrs. Champagne's purchase and believed participation in the operation of a convenience store. Martin Mills continued to pay Champagne's medical costs up to the time of trial. Champagne subsequently brought suit for additional wage benefits, future medical expenses, attorney's fees, and penalties.
After trial on the merits, the trial court found that Champagne was temporarily totally disabled only until July 18, 1988, at which time he was physically able to perform the duties of a dispatcher or similar job. Martin Mills was ordered to pay Champagne compensation through this date.

DISCUSSION
Champagne contends that the trial court erred in failing to find him temporarily totally disabled and entitled to continued worker's compensation benefits. The trial court, in its reasons for ruling, succinctly summarized the medical evidence presented at trial, together with Champagne's testimony regarding his condition, as follows:
"Plaintiff saw Dr. Stuart Phillips,[1] board certified orthopedic surgeon, on May 13, 1988. Dr. Phillips performed comprehensive tests including a physical examination, lumbar x-rays, regular x-rays, a CAT scan and a facet joint block. His diagnosis was that there was arthritis at the L5-S1 facet joint with joint effusion (swelling of the joint.) He found that the joint had been injured and there had been repetitive swelling in the area. Plaintiff was treated with local heat, muscle relaxants and pain relievers. Due to plaintiff's obesity, surgery was out of the question. Plaintiff's attempts to reduce his weight have failed; in fact, he has steadily gained weight.
"Dr. Phillips stated in his deposition that plaintiff was capable of doing supervisory work. He should avoid bending, lifting heavy objects. Plaintiff is able to sit at a desk most of the day. He is also able to work as a dispatcher, a job he has held in the past. Dr. Phillips did not indicate at what point the plaintiff was able to perform these jobs; neither did he indicate that he told plaintiff not to return to work.
"Plaintiff was seen by Dr. Clifton Shepherd on November 11, 1988 at the request of defendant. After a complete medical history was taken, the plaintiff was examined by Dr. Shepherd. He found a congenital tropism in the left facet joint at L5-S1 level.
"It was Dr. Shepherd's testimony that plaintiff was exaggerating his complaints of pain. Dr. Shepherd stated that a normal person would recover within four to six weeks from the type of fall plaintiff described. He then added that with plaintiff's obesity and tropism ... `it is reasonable to assume ... a prolonged recovery ... Six months would be a maximum period of time.'
"Plaintiff indicated at trial that he worked the cash register at the store for fifteen minutes at a time. He gambles for one to two hours on a regular basis. He also testified that he is trying to lose weight by walking on his treadmill for one-half hour per day."
The trial court, considering the testimony of both physicians, found that plaintiff was capable of returning to work within six months of the accident. Although there was a surgical procedure which may have aided in plaintiff's recovery, both Drs. Phillips and Shepherd indicated that plaintiff would be a poor candidate for surgery due to his obesity. Champagne gained substantial weight after his injury although he had lost some weight within the three months prior to trial. Both physicians encouraged him to lose weight, and he cannot recover compensation beyond that period which would have been necessary for his recovery had he lost weight as directed. See Simmons v. La. Health and Human Resources, 502 So.2d 187 (La.App. 3 Cir. *995 1987), writ denied, 503 So.2d 1017 (La. 1987). Therefore, we find no error in the trial court's finding that plaintiff was able to return to work in a supervisory capacity within six months of his accident, or August 18, 1988.
Paul Melancon, a licensed rehabilitation consultant, testified that there were several law enforcement agencies in the area that have dispatcher positions available on a regular basis. The trial court found that these positions paid in excess of what the plaintiff was earning while working for the defendant at the rate of $183.44 per week. Additionally, the evidence presented by Melancon revealed other available and suitable dispatcher positions. We also note that Martin Mills's representative, Ricky Zeno, testified that light duty work at 90% of his pre-injury wages was available to Champagne at any time. This light duty work had been offered to plaintiff several times after his injury and declined by Champagne.
Although Champagne contends that the trial court gave greater weight to the testimony of his non-treating physician than his treating physician, we find that both physicians believed that plaintiff was capable of performing supervisory work. The opinions of both physicians on the issue of disability were consistent although Dr. Phillips was not questioned as to the point in time at which plaintiff could return to work. Thus, we find no merit in Champagne's contention that Dr. Shepherd's testimony was given greater weight.
Likewise, we find no merit in plaintiff's contention that the trial court erred in failing to allow his wife to give her opinion as to his capability to work. The trial court did, in fact, allow Mrs. Champagne to testify as to her husband's physical condition, mobility, and complaints. We find no error on behalf of the trial court as to this contention.
Finally, Champagne contends that the trial court erred in failing to address the issue of arbitrary termination of compensation benefits by Martin Mills and failing to find that Champagne was entitled to penalties and attorney's fees.
The trial court found that, pursuant to the evidence presented, Champagne was merely a co-owner of the store but was not self-employed. The trial court stated, in its reasons for ruling, as follows:
"Plaintiff and his wife purchased a convenience store in May [sic] 1989. [1988] It was at this point that defendant terminated the wage compensation, relying on La.R.S. 23:1221(1)(b) which states, in pertinent part:
`... compensation ... shall not be awarded if the employee is engaged in any ... self-employment regardless of the nature ... of the self-employment including ... employment while working in any pain.'
"Defendant argues that plaintiff receives income from self-employment in excess of ninety percent of his wages earned while working for defendant. This would exempt plaintiff from receiving supplemental earnings benefits under La.R.S. 23:1221(3)(a).
"Plaintiff argues that the purchase of the store was an investment; and that he does not participate in the management or operation of the business. Indeed, plaintiff contends that his injury is such that he was incapable of participating.
"Evidence produced at trial indicates that plaintiff's participation in the operation of the store was minimal. He merely sat at the cash register for brief periods to relieve employees during breaks. This is not sufficient to categorize plaintiff as an employee. Plaintiff's wife testified that she had eight years experience with a previously owned convenience store. She claims that she alone manages the store which she and plaintiff now own. She testified that she makes all decisions in reference to employees, stock, etc. There is no evidence to the contrary."
This ruling by the trial court, i.e., that Champagne was not self-employed, has not been appealed from by Martin Mills. Although attorney's fees and penalties were not discussed in the trial court's reasons for judgment, we find no error in the trial court's failure to award Champagne penalties *996 and attorney's fees due to the defendant's termination of his compensation benefits. We find that it was a reasonable assumption on the part of Martin Mills that, as a co-owner of the convenience store purchased in May of 1988, Champagne would be receiving self-employment income from such a purchase. See Lafleur v. Hartford Ins. Co., 449 So2d 725 (La.App. 3 Cir.1984). The evidence revealed that Champagne's residence was attached to and part of the same building which housed the convenience store. As such, we can understand how it would be difficult, by visual observation, to determine the level of Champagne's participation in the operation of the store.
Although the trial court determined that any benefit received by Champagne from the store, as co-owner, was not to be considered income, we do not find Martin Mills's action in terminating Champagne's compensation benefits, based upon its knowledge of plaintiff's co-ownership, arbitrary, capricious, or without probable cause. We find that Champagne's employment capability was reasonably controverted and find no error in the trial court's denial of penalties and attorney's fees. See La.R.S. 23:1201 E; La.R.S. 23:1201.2.[2]
The trial court awarded Champagne benefits until July 18, 1988. Insofar as the trial court found that plaintiff was able to return to work within six months of his injury, we amend the judgment of the trial court to award benefits until August 18, 1988.
The judgment is hereby amended, as follows:
IT IS HEREBY ORDERED, ADJUDGED AND DECREED that there be judgment in favor of plaintiff, Percy Champagne, and against Martin Mills, Inc., obligating Martin Mills, Inc. to pay worker's compensation benefits in the amount of $122.29 for a period of time beginning February 18, 1988, and until August 18, 1988.
Costs of this appeal and at the trial level are to be paid by Martin Mills, Inc., defendant-appellee herein.
In all other respects, the judgment of the trial court is affirmed.
AFFIRMED AS AMENDED.
NOTES
[*] Honorable Joseph E. Coreil, Retired, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] It appears, from the record, that plaintiff was referred to Dr. Phillips after being treated by his family physician, Dr. Bourgeois. No medical records from Dr. Bourgeois were entered into evidence by either party.
[2] The evidence revealed that the defendant was not aware of plaintiff's medical condition until November of 1988, after plaintiff's compensation benefits were terminated. As this was not the basis on which plaintiff's benefits were terminated, we will not award plaintiff penalties and attorney's fees.